BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED,
MINDGEEK S.A.R.L., MG FREESITES
LTD, MG FREESITES II
LTD, MG CONTENT RT LIMITED,
AND 9219- 1568 QUEBEC INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>    Defendants. | CASE NO.  2:22-CV-01016-DMG-PVC<br><br>Judicial Officer:    Dolly M. Gee<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE**<br><br>Date:      June 17, 2022<br>Time:      9:30 a.m.<br>Courtroom: 8C |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

LEGAL STANDARD ............................................................................................. 5

ARGUMENT ........................................................................................................... 5

I.  Section 230 Bars Plaintiff's Claims against Websites Based on Third-Party Content. ................................................................................................. 5

    A.  Defendants Provide an Interactive Computer Service. .......................... 6

    B.  Plaintiff Seeks to Treat Defendants as the Publishers or Speakers of Third-Party Content. ......................................................................... 6

    C.  The Offending Content Was Created by a Third Party. ......................... 7

II. Plaintiff Fails to Allege Facts Entitling Her to Rely on the FOSTA Exception to Section 230 and Fails to Plead a Viable TVPRA Claim. ......... 13

    A.  Plaintiff Does Not Allege Commercial Sex Trafficking. .................... 15

    B.  Defendants Did Not Participate in Plaintiff's Alleged Trafficking. ........................................................................................... 16

    C.  Defendants Had Neither Actual nor Constructive Knowledge of Plaintiff's Alleged Trafficking. ........................................................... 19

III. Section 230 Applies to All of Plaintiff's Remaining Claims. ........................ 20

IV. Plaintiff's Remaining Claims Fail for Additional Reasons. .......................... 21

    A.  Plaintiff's FAC Engages in Improper Group Pleading. ....................... 21

    B.  Plaintiff Has Not Alleged That Defendants Knowingly Possessed and Distributed CSEM. .......................................................................... 22

    C.  Defendants Have Not Violated Cal. Civ. Code § 1708.85. ................. 22

    D.  Plaintiff's UCL Claim Should Be Dismissed. ................................... 23

    E.  Plaintiff's Cal. Civ. Code § 52.5 Claim Should Be Dismissed. .......... 24

    F.  The Intentional Infliction of Emotional Distress Claim Should Be Dismissed. ........................................................................................... 24

V.  The Court Lacks Personal Jurisdiction Over MindGeek S.à.r.l. .................... 24

CONCLUSION ...................................................................................................... 25

i                                     CASE NO. 2:22-CV-01016

**MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. v. Wyndham Hotels & Resorts, Inc. et al.*,
    532 F. Supp. 3d 1018 (D. Or. 2021) ...................................................................17

*Allergan, Inc. v. Merz Pharms., LLC*,
    2011 WL 13323227 (C.D. Cal. Aug. 1, 2011) ...................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................5

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................................................20

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ...................................................................6, 7, 21

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    137 S. Ct. 1773 (2017)...................................................................................24, 25

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017)......................................................................21

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .......................................................................7, 19

*Corradino v. Liquidnet Holdings Inc.*,
    2021 WL 2853362 (S.D.N.Y. July 8, 2021)......................................................15

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    749 F. App'x 502 (9th Cir. 2018)........................................................................5

*Diez v. Google, Inc.*,
    831 F. App'x 723 (5th Cir. 2020) ......................................................................21

*Doe #1 v. MG Freesites, LTD*,
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022).......................................3, 10, 13, 16

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ..................................................21

*Doe v. Kik Interactive, Inc.*,
   482 F. Supp. 3d 1242 (S.D. Fla. 2020)..........................................................*passim*

*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. Sept 3, 2021).............................................*passim*

*Doe v. Mindgeek USA Inc.*,
   2021 WL 5990195 (C.D. Cal. Dec. 2, 2021)...........................................3, 10, 11

*Doe v. Mindgeek USA Inc.*,
   2021 WL 6618628 (C.D. Cal. Dec. 28, 2021).......................................................4

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ...............................................................................6

*Doe v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ........................................................................18, 19

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ..................................................*passim*

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021)...........................................10, 13, 21

*Doe v. WebGroup Czech Republic*,
   2022 WL 982248 (C.D. Cal. Jan. 13, 2022)......................................................22

*Dunham v. Lei*,
   2021 WL 4595808 (C.D. Cal. June 7, 2021)........................................................7

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ..............................................................6, 7, 9, 11

*Evans v. Alliance Funding*,
   2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) ..................................................3

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ......................................................................*passim*

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) ..................................................................................7

*Ginsberg v. Google Inc.*,
   2022 WL 504166 (N.D. Cal. Feb. 18, 2022)........................................................8

CASE NO. 2:22-CV-01016
**MOTION TO DISMISS COMPLAINT**

*Goddard v. Google, Inc.,*
  2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .................................................. 6, 9

*Goddard v. Google, Inc.,*
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................................. 8

*Gonzalez v. Google, LLC,*
  2 F.4th 871 (9th Cir. 2021) ........................................................................... *passim*

*Holt v. Facebook, Inc.,*
  240 F.Supp.3d 1021 (N.D. Cal. 2017) .................................................................. 24

*Hughes v. Pair,*
  209 P.3d 963 (Cal. 2009) ....................................................................................... 24

*J. B. v. G6 Hosp., LLC,*
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ............................................ *passim*

*J. B. v. G6 Hosp., LLC,*
  2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ................................................ 13, 14

*Kimzey v. Yelp! Inc.,*
  836 F.3d 1263 (9th Cir. 2016) .............................................................................. 11

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.,*
  2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) .................................................... 15

*La Park La Brea A LLC v. Airbnb, Inc.,*
  285 F. Supp. 3d 1097 (C.D. Cal. 2017) ................................................. 6, 9, 10, 11

*M.H. v. Omegle.com, LLC,*
  2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ................................................... 10, 14

*M.L. v. Craigslist, Inc.,*
  2020 WL 6434845 (W.D. Wash. Apr. 17, 2020) .................................................. 12

*M.L. v. Craigslist, Inc.,*
  2021 WL 5217115 (W.D. Wash. Sept. 16, 2021) ................................................. 12

*M.L. v. Craigslist, Inc.,*
  2022 WL 1210830 (W.D. Wash. Apr. 25, 2022 ............................................ 10, 12

*Morton v. Twitter, Inc.,*
  2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ....................................................... 21

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................. 18

*North Atl. Imports, LLC v. NexGrill Indus., Inc.*,
    2020 WL 1042209 (C.D. Cal. Jan. 23, 2020) ..................................... 22

*M.A. ex rel. P.K v. Village Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011) .............................................. 21

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir. 2007) ............................................................ 21

*Riggs v. MySpace, Inc.*,
    444 F. Appx. 986 (9th Cir. 2011) ......................................................... 9

*Roberts v. Cnty. of Riverside*,
    2020 WL 3965027 (C.D. Cal. June 5, 2020) ................................... 5, 22

*S.J. v. Choice Hotels Int'l*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................... 16, 20

*Sarafian v. Wright Med. Tech., Inc.*,
    2016 WL 1305087 (C.D. Cal. Apr. 1, 2016) ...................................... 25

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ............................................ 15, 16, 17

*United States v. Bazar*,
    747 F. App'x 454 (9th Cir. 2018) ...................................................... 16

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006) ........................................................... 15

*United States v. Dobbs*,
    629 F.3d 1199 (10th Cir. 2011) ......................................................... 22

*United States v. Durham*,
    902 F.3d 1180 (10th Cir. 2018) ......................................................... 16

*United States v. Myers*,
    355 F.3d 1040 (7th Cir. 2004) ........................................................... 22

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ............................................................................. 22

*United States v. Zitlalpopoca-Hernandez,*
    495 F. App'x 833 (9th Cir. 2012).................................................................16, 19

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
    478 F.3d 413 (1st Cir. 2007) ................................................................................9

*Van Patten v. Vertical Fitness Group, LLC,*
    847 F.3d 1037 (9th Cir. 2017) ...........................................................................23

*Yost v. Nationstar Mortg., LLC,*
    2013 WL 4828590 (E.D. Cal. Sept. 9, 2013) ....................................................21

*In re Zoom Video Commc'ns Inc. Priv. Litig.,*
    525 F. Supp. 3d 1017 (N.D. Cal. 2021).................................................................8

**Statutes**

18 U.S.C. § 1591 ....................................................................................*passim*

18 U.S.C. § 1595 ....................................................................................*passim*

18 U.S.C. § 2252A ...............................................................................21, 22

18 U.S.C. § 2255 .........................................................................................21

47 U.S.C. § 230 ......................................................................................*passim*

Cal. Bus. & Prof. Code § 17204 ...............................................................23

Cal. Civ. Code § 52.5 ............................................................................21, 24

Cal. Civ. Code § 1708.85 ...................................................................21, 22, 23

Cal. Penal Code § 236.1(c) ........................................................................24

**Rules**

Fed. R. Civ. P. 8 .......................................................................................5, 22

Fed. R. Civ. P. 12 ...........................................................................................5

**INTRODUCTION**

Plaintiff in this putative nationwide class action alleges that when she was approximately sixteen years old, she "engage[d] in sexual acts over a video chatting service" for an unidentified man and that he recorded the video. First Amended Complaint [Dkt. 28] ("FAC") ¶ 158. At some later point, the video was posted by an unidentified person to "various websites" including one operated by MG Freesites Ltd ("Freesites"), Pornhub.com ("Pornhub"). *Id.* ¶ 159. Defendants had nothing to do with the creation of the video—indeed, the FAC does not allege the creator ever even used Pornhub. Nor did Defendants have anything to do with the decision to post the video to the internet. Nevertheless, this putative class action attempts to shift the legal liability from the individuals who did so to Defendants[1] for allegedly owning and operating Pornhub, one of many internet websites that provide a platform for the public to upload and share their video content.

All of Plaintiff's claims are barred by Section 230 of the Communications Decency Act ("Section 230"), which affords a provider of an interactive computer service (an "ICS") broad immunity from liability for content posted to its websites by third parties. 47 U.S.C. § 230(c)(1). Section 230 also expressly preempts all state laws inconsistent with such immunity. *Id.* § 230(e)(3). In passing Section 230, Congress made a deliberate policy decision that ICSs cannot be held liable for content created by their users. Without such immunity—as the law stood prior to the passage of Section 230—websites would face a perverse incentive whereby they could be held liable if they attempted to moderate content, but not be held liable if they chose not to act at all. *See Gonzalez v. Google, LLC*, 2 F.4th 871, 887 (9th Cir. 2021). Congress passed Section 230 because it recognized that if ICSs "were forced to choose between taking responsibility for all messages and deleting no messages at all, [they] would

[1] Defendants Freesites, MindGeek USA Inc., MindGeek S.à.r.l., 9219-1568 Quebec Inc., MG Freesites II Ltd., and MG Content RT Ltd. (collectively "Defendants") dispute Plaintiff's allegations that they all own or operate websites. Defendants do not undertake to distinguish among the different entities for purposes of this motion.

1   have to choose the latter course." *Fair Hous. Council v. Roommates.com, LLC*, 521

2   F.3d 1157, 1163 (9th Cir. 2008).

3          Plaintiff attempts to circumvent Section 230's broad grant of immunity by

4   contending that Defendants are responsible for third-party illegal content because

5   their content tools and algorithms allow third parties to post and view illegal content

6   and that Defendants knowingly benefit from illegal content.  This argument fails as a

7   matter of law because those tools do not make Defendants *creators* of the content.

8   Plaintiff further contends that notwithstanding Section 230, Defendants are liable

9   under 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act

10  ("TVPRA").  But while Section 230 contains a narrow exception for certain TVPRA

11  claims, it applies only "if the conduct underlying the claim constitutes a violation of

12  [18 U.S.C. §] 1591," the criminal statute prohibiting commercial sex trafficking.  47

13  U.S.C. § 230(e)(5)(A).  Plaintiff fails to plead a TVPRA claim because she does not

14  plead facts establishing that the actions of the unidentified man who created the video

15  constitute commercial sex trafficking or that Defendants participated in or had

16  knowledge of, that alleged trafficking, both of which Sections 1591 and 1595 require.

17  Accordingly, Section 230 bars all of Plaintiff's claims and, in any event, all of

18  Plaintiff's claims fail for additional reasons as well.  *See infra* Parts III-IV.

19         Several courts, including in this Circuit, have recently applied Section 230 and

20  the TVPRA to online platforms where users have posted illegal pornography or

21  engaged in trafficking.  A clear majority have held that allegations like Plaintiff's fail

22  to overcome Section 230 and/or fail to state a claim under the TVPRA.  *E.g.*, *Doe v.*

23  *Reddit, Inc.*, 2021 WL 5860904 (C.D. Cal. Oct. 7, 2021); *see infra* Part I.C (collecting

24  and discussing cases).[2]

25

26  ───────────────
    [2] Three of these cases are before the Ninth Circuit on appeal.  *J.B. v craigslist, Inc.*,

27  No. 22-15290 (9th Cir.); *Doe v. Twitter, Inc.*, No. 22-15103 (9th Cir.); *Doe v. Reddit,*
    *Inc.*, No. 21-56293 (9th Cir.).  Another is pending in the Eleventh Circuit.  *M.H. v.*

28  *Omegle.com, LLC*, No. 22-10338 (11th Cir.).

Plaintiff will undoubtedly urge the Court to follow the recent contrary decisions in *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ("*MindGeek I*"), *reconsid. denied,* 2021 WL 5990195 (C.D. Cal. Dec. 2, 2021) ("*MindGeek II*"), and *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022).  But those cases should be viewed within the broader line of circuit and district court cases showing unequivocally that Section 230 mandates dismissal of Plaintiff's lawsuit.  Those two cases are also factually distinguishable on the allegations, and thus of little interpretive value here.  Accordingly, for these reasons and the reasons outlined below, Plaintiff's suit should be dismissed with prejudice.

## BACKGROUND

Pornhub is an adult interactive video site and one of the most popular websites in the world.  *See* FAC ¶¶ 38, 40, 42.  Pornhub's interface is similar to YouTube's; its main feature is a library of videos uploaded by third-party users.  *Id.* ¶¶ 43-45.  Those who wish to upload videos must register and agree to be bound by the website's Terms of Service, which expressly prohibit "post[ing] any Content that depicts any person under 18 years of age … whether real or simulated."[3]  Pornhub also retains full-time moderators to screen for Child Sexual Exploitation Material ("CSEM") and other inappropriate content.  FAC ¶ 96.

Plaintiff's suit arises out of a video made by a man who asked her to perform "sexual acts over a video chatting service" when she was "approximately 16 years old," which she apparently did.  *Id.* ¶ 158.  This chatting service was not affiliated with Defendants.  Plaintiff alleges that the video of her performance was later uploaded to "various websites, including Pornhub.com, between 2016 and 2017." *Id.* ¶ 159.  The FAC is deliberately vague as to who uploaded the video, what it depicts,

---

[3] *See* Pornhub.com Terms of Service (Apr. 25, 2022) (Decl. of Benjamin M. Sadun ("Sadun Decl.") Ex. A).  The FAC references the Terms of Service, FAC ¶ 106, and the Court may consider documents referenced in the complaint on a motion to dismiss. *See, e.g.*, *Evans v. Alliance Funding*, 2010 WL 11482495, *5 (C.D. Cal. Dec. 13, 2010).

**MOTION TO DISMISS COMPLAINT**

or where it was first uploaded.  Plaintiff claims that as soon as she learned that the video was on Pornhub she requested that the video be taken down, and it was.  *Id.* ¶ 162.  Plaintiff does not allege what she said in her takedown request or even whether she informed Defendants she was underage in the video.  She contends that the video was reuploaded a second time but concedes that it was again removed, and there is no allegation that the video ever appeared on Pornhub again.  *Id.*

Tellingly, the FAC contains 216 paragraphs.  Yet only nine vague paragraphs concern allegations about Plaintiff herself or the video depicting her, and only one of those paragraphs discusses Plaintiff's interactions with Freesites.  *Id.* ¶¶ 158-166; *id* ¶ 162.  Instead, the FAC dedicates dozens of paragraphs to general allegations about Defendants' purported business practices, without ever tying those practices to Plaintiff or her alleged injury.  *Id.* ¶¶ 38-157.  While Defendants dispute the accuracy of these allegations, they are irrelevant to this motion because Plaintiff has not connected any alleged wrongdoing by ***Defendants* to** the harm ***she*** allegedly suffered.  Indeed, the FAC acknowledges that Defendants prohibit and actively delete CSEM and other forms of illegal content. And after Plaintiff asked to have the video removed, it was taken down.  *Id.* ¶ 162.

Plaintiff first tried to join her claims into a previously filed putative class action pending before the Honorable Cormac Carney.  *Doe v. Mindgeek USA Inc.*, No. 21-cv-00338, ECF No. 89.  Judge Carney denied the motion to amend and stayed the case on other grounds.  *Doe v. Mindgeek USA Inc.*, 2021 WL 6618628, at *2 (C.D. Cal. Dec. 28, 2021).  Plaintiff then refiled an almost identical complaint in this Court as a new stand-alone matter, seeking to represent the same class as is described in the stayed *MindGeek* case.  *See* ECF No. 1.[4]  Without the required consent by Defendants

---

[4] Plaintiff filed a "Notice of Related Cases" along with her complaint in this case and requested that the case be transferred to Judge Carney.  ECF No. 4.  Judge Carney declined that request, writing that "through resolving other motions in [*MindGeek*], the Court has determined that the issues presented are highly individualized and plaintiff-specific" and that "[t]herefore, there will be no duplication of effort for

4

**MOTION TO DISMISS COMPLAINT**

or leave of Court, Plaintiff filed her FAC on April 20, 2022.  ECF No. 28.

## LEGAL STANDARD

Defendants move to dismiss under Federal Rules of Civil Procedure 8, 12(b)(2) and 12(b)(6).  A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id.* Where, as here, the allegations in a complaint are sufficient to demonstrate Section 230 immunity, the complaint should be dismissed. *See, e.g.*, *Gonzalez*, 2 F.4th at 890 n.8.  All of Plaintiff's claims should be dismissed for failure to state a claim for additional reasons as well.

Moreover, "a lack of differentiation in the allegations against multiple defendants is cause for dismissal pursuant to Rule 8." *Roberts v. Cnty. of Riverside*, 2020 WL 3965027, at *3 (C.D. Cal. June 5, 2020).  In addition, when a plaintiff has failed to plead general or specific personal jurisdiction over a defendant such as MindGeek S.à.r.l., a foreign holding company, the defendant must be dismissed. *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 504 (9th Cir. 2018).

## ARGUMENT

**I.     Section 230 Bars Plaintiff's Claims against Websites Based on Third-Party Content.**

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  In other words, websites cannot be held liable as the publishers of user-generated content like the video of Plaintiff made by a man who contacted her over a video chatting service.  FAC ¶ 158. Thus, because Plaintiff seeks to hold Defendants liable for third-party content posted

---

another court to evaluate the claims presented in [this case]."  ECF No. 15 at 2.

**MOTION TO DISMISS COMPLAINT**

1  to Pornhub, her claims are proscribed by Section 230.

2      Section 230 applies where, as here, a defendant is "(1) a provider or user of an

3  interactive computer service (2) whom a plaintiff seeks to treat … as a publisher or

4  speaker (3) of information provided by another information content provider."

5  *Gonzalez*, 2 F.4th at 891 (ellipses in original); *Dyroff v. Ultimate Software Grp., Inc.*,

6  934 F.3d 1093, 1097 (9th Cir. 2019). These elements are construed broadly. "Courts

7  consistently have held that § 230 provides a 'robust' immunity… and that all doubts

8  'must be resolved in favor of immunity ….'" *Goddard v. Google, Inc.*, 2008 WL

9  5245490, at *2 (N.D. Cal. Dec. 17, 2008) (citations omitted); *accord Doe v. MySpace,*

10  *Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

11      **A.    Defendants Provide an Interactive Computer Service.**

12      An ICS is "any information service, system, or access software provider that

13  provides or enables … access by multiple users to a computer server." 47 U.S.C.

14  § 230(f)(2). This includes video sharing websites. *E.g.*, *Gonzalez*, 2 F.4th at 891

15  (YouTube); *MindGeek I*, 558 F. Supp. at 835. Plaintiff does not allege otherwise.

16      **B.    Plaintiff Seeks to Treat Defendants as the Publishers or Speakers
        of Third-Party Content.**

17

18      In evaluating whether Plaintiff is seeking to hold an ICS liable as a publisher,

19  "what matters is not the name of the cause of action" but "whether the cause of action

20  inherently requires the court to treat the defendant as the 'publisher or speaker' of

21  content provided by another …. If it does, section 230(c)(1) precludes liability."

22  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009); *accord Myspace*, 528

23  F.3d at 417-18. Like the other elements of Section 230 immunity, courts have adopted

24  a "capacious conception of what it means to treat a website operator as the publisher

25  or speaker of information provided by a third party." *La Park La Brea A LLC v.*

26  *Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1103 n.4 (C.D. Cal. 2017) (Gee, J.) (citation

27  omitted). Thus, Section 230 bars claims based on "reviewing, editing, and deciding

28  whether to publish or to withdraw from publication third-party content." *Barnes*, 570

F.3d at 1102; *accord, e.g.*, *Gonzalez*, 2 F.4th at 892.

The gravamen of Plaintiff's claim is that she was harmed by "[t]he circulation of the video" on "various websites, including Pornhub.com." FAC ¶¶ 159, 161.  She also alleges that Defendants wrongfully allowed third-party users to find and view that content, FAC ¶ 160, and did not adequately filter out such content. *E.g.*, *id.* ¶¶ 46, 96-105.  As the Ninth Circuit has explained, however, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates*, 521 F.3d at 1170-71.  For example, in *Barnes,* Section 230 barred a negligence claim based on the defendant's failure to "remov[e] … indecent profiles that [the plaintiff's] former boyfriend posted on Yahoo's website" because "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."  570 F.3d at 1103; *see also Force v. Facebook, Inc*., 934 F.3d 53, 65 (2d Cir. 2019) (similar).

Plaintiff's claims here fall within the scope of Section 230 for the same reason. Although styled as a variety of federal and state causes of action, at bottom they are all based on allegations about Defendants' decisions "whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102.

## C.    The Offending Content Was Created by a Third Party.

Under the third Section 230 element, the relevant inquiry is whether the ICS itself "create[d] or develop[ed] the specific content at issue."  *Dyroff*, 934 F.3d at 1097; *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (ICS is immune unless it creates the "particular information" that provides the basis of the plaintiff's claim); *cf. Dunham v. Lei*, 2021 WL 4595808, at *10 (C.D. Cal. June 7, 2021) (Gee, J.) (Section 230 did not apply where the website itself created infringing products and advertisements). The sole content on Pornhub depicting Plaintiff was created by a third party—the man who recorded her performing sex acts over a video chatting service unaffiliated with Defendants.  FAC ¶ 158.  The FAC is

**MOTION TO DISMISS COMPLAINT**

deliberately vague about how the video ended up on "various websites," *id.* ¶ 159, but the bottom line is that Plaintiff does not claim Defendants played any role in the creation of the video. To the contrary, the FAC makes clear that all her claims are premised on allegations that Defendants made it too easy for ***users*** of their websites to upload and share illegal content. For example, Plaintiff alleges that "[a] user can post any video or image of any person doing anything without any consequences," *id.* ¶ 46, "there is nothing to stop" users from uploading underage content, *id.* ¶ 54, and Defendants' efforts to monitor uploaded content are inadequate. *Id.* ¶¶ 96-105, 107-09. Such claims are barred; Defendants' "failure to edit or block user-generated content is the very activity Congress sought to immunize." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1025 (N.D. Cal. 2021) (citation and internal quotation marks omitted) (quoting *Roommates*, 521 F.3d at 1172 n.32).

Because she cannot deny that the video of her was created by a third party, Plaintiff instead tries to claim that Defendants are nevertheless responsible for it because they profit from, know of, disseminate, or tacitly tolerate illegal content generally on Pornhub. *E.g.*, FAC ¶¶ 93, 110, 115. But the "third [Section 230] prong focuses solely on who created the content at issue." *Ginsberg v. Google Inc.*, 2022 WL 504166, at *5 (N.D. Cal. Feb. 18, 2022). A website "retains its [Section 230] immunity" unless it "contribute[s] materially" to the illegal nature of the content itself, such as by directly requiring users to post something illegal or by transforming legal content into illegal content. *Roommates*, 521 F.3d at 1169. Even when an ICS provides tools that are capable of being used unlawfully, and "***knows*** that third parties are using such tools" to create or share illegal content, Section 230 immunity still applies. *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (cleaned up) (emphasis in original); *see also Gonzalez*, 2 F.4th at 892-93.

The same result is warranted here because none of Plaintiff's allegations show that Defendants materially contributed to the video's illegality. Courts have consistently held that the kinds of allegations Plaintiff makes about how Defendants

organize, display, screen, or profit from illegal content do not overcome Section 230 immunity. *See Gonzalez*, 2 F.4th at 893-94 (algorithmic content suggestion and search technology); *Dyroff*, 934 F.3d at 1097 (content suggestion, anonymity, anonymous messaging); *Riggs v. MySpace, Inc.*, 444 F. Appx. 986, 987 (9th Cir. 2011) (inadequate moderation); *Roommates*, 521 F.3d at 1174 n.37 (search technology); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) (knowledge of offending content); *Goddard*, 2008 WL 5245490, at *3 (advertising revenue); *Airbnb*, 285 F. Supp. 3d at 1104 (anonymous posting).

This Court's prior ruling in *Airbnb* is instructive. In that case, the plaintiffs were landlords who alleged that Airbnb permitted landlords' tenants to sublease their apartments on Airbnb's website even though Airbnb knew that it was a violation of the lease agreement between the posting tenant and the plaintiffs. The Court granted Airbnb's motion to dismiss because Airbnb was not the creator of the allegedly unlawful postings. *Airbnb*, 285 F. Supp. 3d at 1104-05. The plaintiffs alleged that Airbnb should be treated as an information content provider because it did more than merely post listings: it required hosts to provide information about the property and themselves; collected payments; and offered "ancillary services, such as user information verification, messaging systems, photography, local occupancy tax collection and remittance, a pricing tool, host insurance, and a guest refund policy." *Id.* at 1104. The plaintiffs further alleged that Airbnb should not receive Section 230 immunity because it had actual knowledge that users were violating their leases. *Id.* This Court rejected those arguments, finding that the "conduct d[id] not make Airbnb an information content provider" because the actions taken by Airbnb did not "'contribute[ ] materially to the alleged illegality of the conduct,' *i.e.*, the violation of the … lease." *Id.* (quoting *Roommates*, 521 F.3d at 1168).

The same is true in this case. Providing a platform for adult videos that contains algorithmic search features and other ancillary tools is not unlawful. The video at issue in this case is unlawful because it allegedly depicts an underage person engaging

**MOTION TO DISMISS COMPLAINT**

1  in sexual activity—actions taken by Plaintiff and the man who recorded the video, not

2  because of any action taken by Defendants or any function of the Pornhub website.

3      Applying the same reasoning as *Airbnb*, a clear majority of district courts have

4  recently held that Section 230 bars claims against websites that host user-generated

5  CSEM or that third parties use to engage in sex trafficking.  *M.L. v. craigslist, Inc.*

6  (*M.L. IV*), 2022 WL 1210830, at *14-17 (W.D. Wash. Apr. 25, 2022); *M.H. v.*

7  *Omegle.com, LLC*, 2022 WL 93575, at *1, 5 (M.D. Fla. Jan. 10, 2022);[5] *Reddit*, 2021

8  WL 5860904, at *5-6; *J. B. v. G6 Hosp., LLC* (*J.B. I*), 2020 WL 4901196, at *7 (N.D.

9  Cal. Aug. 20, 2020); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 927-32 (N.D. Cal.

10  2021); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1248 (S.D. Fla. 2020).

11      Defendants acknowledge that another court in this District declined to dismiss

12  claims by a different plaintiff arising out of videos posted to Pornhub on a theory that

13  various Pornhub features allegedly encouraged users to post CSEM and thereby

14  "materially contributed" to the creation of such content "on [their] platforms."

15  *MindGeek I*, 558 F. Supp. 3d at 841-42.  A court in the Northern District of Alabama,

16  relying heavily on *MindGeek I*, also took the same approach in another case involving

17  Pornhub.  *MG Freesites*, 2022 WL 407147.  Defendants respectfully submit, however,

18  that *MindGeek* misapplied Ninth Circuit precedent and that both cases are out of step

19  with the consensus of other federal courts that have addressed similar cases.

20      *MindGeek* held that allegations that Pornhub's design "encourage[d]" users to

21  post illegal content were sufficient to fall within the narrow "material contribution"

22  exception to Section 230.  *MindGeek II*, 2021 WL 5990195, at *6.  But as this Court

23  has recognized, if "the alleged content provider is not a creator of the challenged

24  content, ***it must have done more than merely 'encouraged'*** the creation of the

25

26  _____

[5] Notably, *Omegle* held that an ICS was immune where a third party coerced a minor
27  to disrobe in a video chat and recorded her.  2022 WL 93575, at *1, 5.  That holding
applies with even more force where, as here, the defendant ICS did not even operate
28  the video chat platform involved.

challenged conduct; the alleged provider must have **required** another to create that content." *Airbnb*, 285 F. Supp. 3d at 1107 (cleaned up) (emphasis in original) (quoting *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015)).  As the Ninth Circuit has cautioned:

> We must keep firmly in mind that this is an immunity statute we are expounding, a provision enacted to protect websites against the evil of liability for failure to remove offensive content.  Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that *something* the website operator did encouraged the illegality.  Such close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties.

*Roommates*, 521 F.3d at 1174 (emphasis in original and citation omitted).  The Ninth Circuit has found this test satisfied only once, in *Roommates*—a case where the ICS **required** users to list illegal preferences as to sexual orientation, family status, race, and other unlawful criteria before they could post advertisements for housing.  *Id*. at 1166.  By contrast, the Ninth Circuit has consistently declined to pierce Section 230 immunity where the ICS merely amplified, edited, recommended, or provided an attractive forum for illegal content.  *E.g.*, *Gonzalez*, 2 F.4th at 892-93; *Dyroff*, 934 F.3d at 1098; *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 (9th Cir. 2016).

As set forth above, the majority of district courts applying these precedents have held that Section 230 bars claims against websites that host user-generated CSEM or that third parties use to engage in sex trafficking, even where those platforms allegedly know of, benefit from, or facilitate the illegal activity. *MindGeek*'s holding (adopted by *MG Freesites*) that Section 230 would not apply if Pornhub's design "encourage[d]" illegal content, *MindGeek II*, 2021 WL 5990195, at *6, is contrary to the broad consensus of other district courts.  Indeed, in *Reddit*, Judge Selna dismissed claims by the exact same plaintiff involved in *MindGeek I* against another website that hosted the same videos.  2021 WL 5860904, at *5-6.

**MOTION TO DISMISS COMPLAINT**

Moreover, the precedent that *MindGeek I* relied on has been vacated. *MindGeek I*'s material contribution analysis relied mainly on *M.L. v. Craigslist, Inc.* (*M.L. I*), 2020 WL 6434845 (W.D. Wash. Apr. 17, 2020), *rpt. & rec. adopted* (*M.L. II*), 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020), in which the court held Section 230 inapplicable to claims that craigslist knowingly hosted classified ads prostituting minors. *MindGeek I*, 558 F. Supp. 3d at 841-42.  But the magistrate judge who issued *M.L. I* subsequently reconsidered her opinion in light of *Gonzalez* and concluded that the allegations that craigslist encouraged and knowingly profited from trafficking content "fail[ed] to allege that craigslist materially contributed to the creation of the illegal content."  *M.L. v. craigslist Inc.* (*M.L. III*), 2021 WL 5217115, at *6, 12-13, 25 (W.D. Wash. Sept. 16, 2021).  The district court agreed and recently dismissed those claims with prejudice.  *M.L. IV*, 2022 WL 1210830, at *14-17.

In addition, even assuming, *arguendo*, that Defendants materially contribute to some of the illegal content on Pornhub, Defendants had nothing to do with the creation of ***Plaintiff's*** video.  "An internet service provider can have § 230 immunity for some claims or activities and not others."  *M.L. IV*, 2022 WL 1210830, at *13 n.13; *see also Roommates*, 521 F.3d at 1172-75 (finding no immunity for content defendant required users to provide but upholding immunity for content in "blank text box").   In *MindGeek I*, the plaintiff's ex-boyfriend had a Pornhub account at the time he filmed the plaintiff, had allegedly uploaded hundreds of pornographic videos, and uploaded videos of Plaintiff directly to Pornhub himself.  558 F. Supp. 3d at 833-34.  On those facts, the court found it was plausible to infer that the purported general encouragement of CSEM on Pornhub influenced the ex-boyfriend as well. *Id.* at 842 n.6.  Defendants dispute that such an inference is plausible, but even that much is not alleged here.  Instead, the video of Plaintiff was created on an entirely different chat platform, FAC ¶ 158, by a user who is not alleged to have had any contact whatsoever with Pornhub.  Thus, there are no facts supporting an inference that Pornhub even

1   encouraged, let alone materially contributed, to the creation of her video in particular.[6]

2   In short, *MindGeek*'s finding of material contribution based on

3   "encouragement" is inconsistent with controlling precedent, and the Court should find

4   Section 230 applies here.  Defendants do not materially contribute to user-generated

5   CSEM because nothing about the design of Pornhub requires users to post it; to the

6   contrary, CSEM violates the websites Terms of Service and is removed by

7   moderators.  And such contribution is especially lacking here, where there is no

8   alleged nexus at all between Pornhub and the man who created the offending content.

9   **II.   Plaintiff Fails to Allege Facts Entitling Her to Rely on the FOSTA Exception to Section 230 and Fails to Plead a Viable TVPRA Claim.**

10

11   Plaintiff's First Count asserts a claim under 18 U.S.C. § 1595, the TVPRA's

12   civil provision.  FAC ¶¶ 174-184.  She will undoubtedly argue that this claim should

13   be allowed to proceed based upon the narrow exemption from Section 230 created by

14   the 2018 Allow States to Fight Online Sex Trafficking Act ("FOSTA").  Although

15   FOSTA removed Section 230 immunity for a small set of sex trafficking offenses, it

16   does not subject ICSs to liability for all claims involving trafficking on their

17   platforms; rather, it "withdraws immunity only for claims asserting that the

18   ***defendant's own conduct*** amounts to a violation of ***[S]ection 1591***," the TVPRA's

19   criminal provision.  *J. B. v. G6 Hosp., LLC* (*J.B. II*), 2021 WL 4079207, at *4 (N.D.

20   Cal. Sept. 8, 2021) (emphasis added).  Although two district courts have taken a

21   broader interpretation, holding that a plaintiff can fall with the FOSTA exception

22   based on a violation of Section 1591 by *someone other than the defendant*, *MindGeek*

23   *I*, 558 F.Supp.3d at 836; *Twitter*, 555 F. Supp. 3d at 921-22 (same), a clear majority—

---

24   [6] *MG Freesites* is even less apt because the perpetrators who created the videos there

25   were enrolled in Pornhub's "ModelHub" and "Content Partner" revenue-sharing programs, and the court specifically discussed Pornhub's alleged role in controlling

26   and directing content by such persons.  2022 WL 407147, at *5, 16-17.  Defendants

27   strenuously deny that an uploader's mere participation in either of these programs is sufficient to vitiate immunity under Section 230, but these allegations in the Alabama

28   case put it on a very different analytical footing from this case.

including courts in this Circuit—have rejected that position. *J.B. II*, 2021 WL 4079207, at *12; *Omegle*, 2022 WL 93575, at *3; *Reddit*, 2021 WL 5860904, at *7; *Kik Interactive*, 482 F. Supp. 3d at 1251; *M.L. II*, 2020 WL 5494903, at *4. As explained in the *J.B.* court's thorough analysis, FOSTA's plain language, structure, and legislative history all show that TVPRA claims against ICSs are barred by Section 230 unless the plaintiff can plead (and ultimately prove) that the ICS itself violated Section 1591. *J.B. II*, 2021 WL 4079207, at *6-11. Plaintiff does not plead facts sufficient to establish that Defendants violated Section 1591. She likewise fails to plead a claim under Section 1595.

Here, Plaintiff seeks to hold Defendants liable as secondary participants of a trafficking scheme. FAC ¶ 176 (alleging that Defendants "knowingly benefit from child trafficking"). The basic elements of Sections 1591 and 1595 largely overlap. To satisfy the requirements for secondary liability under Section 1591, Plaintiff must plead that Defendants knowingly benefited from participation in a sex trafficking venture that engaged in certain covered activities, including recruitment, enticement and solicitation of Plaintiff, knowing or in reckless disregard of the fact that Plaintiff had not attained the age of 18 and would in the future be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a). To make out a secondary liability claim under Section 1595, Plaintiff must plead that she was a victim of commercial sex trafficking, that Defendants benefited from participating in a venture that trafficked her, and that Defendants knew or should have known about that specific trafficking involving her. 18 U.S.C. § 1595(a). In light of the foregoing, to fall within the FOSTA exception and state a claim under Section 1595, Plaintiff must allege that: (1) she was a victim of commercial sex trafficking; (2) Defendants benefited from knowing participation in that trafficking; and (3) Defendants knew of the specific sex trafficking involving Plaintiff.

Section 1591 requires a higher level of scienter and participation than Section 1595. Regarding scienter, to plead a Section 1595 claim, the plaintiff must allege

**MOTION TO DISMISS COMPLAINT**

facts showing the defendant "knew or should have known" of the specific trafficking at issue, *id.* § 1595(a), whereas Section 1591 requires that the defendant actually knew of or recklessly disregarded the trafficking. *Id.* § 1591(a)(2); *Kik Interactive*, 482 F. Supp. 3d at 1249.  Regarding participation in the sex trafficking venture, Section 1595 requires, at a minimum, that the defendant have had a "tacit agreement" with the traffickers to engage in sex trafficking. *J.B. I*, 2020 WL 4901196, at *9, 10.  Section 1591, however, requires that the defendant have actually participated in the sex trafficking itself. 18 U.S.C. § 1591(e)(4); *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).   As discussed below, Plaintiff fails to plead the elements of Section 1595 and, by extension, the more demanding ones of Section 1591.

## A.      Plaintiff Does Not Allege Commercial Sex Trafficking.

As Plaintiff acknowledges, the TVPRA applies only to "trafficking" for "commercial sex."  FAC ¶¶ 5, 34.  A commercial sex act is one "on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3). The Ninth Circuit has interpreted this to mean "money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006).  It is not enough that someone profit indirectly from a sex act; there must be a causal *quid pro quo* between the sex act and an exchange of value.  *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).

Plaintiff does not allege that the "sexual acts" depicted in her video were commercial.  Rather, Plaintiff alleges only that a man she was chatting with on an unidentified social media platform "solicited her to engage in sexual acts" on camera and recorded her.  FAC ¶ 158.  She does not allege that the unidentified male gave or offered her anything of value in exchange for these acts or intended to use the video for economic gain.  Plaintiff does not describe the content of the video other than the conclusory assertion that it depicts "sexual acts."  FAC ¶ 158.  Not only has Plaintiff failed to plead facts stating the nature of such acts, but even if she had, the production

of pornography—legal or not—for private use is not a ***commercial*** sex act.  *See United States v. Durham*, 902 F.3d 1180, 1195 (10th Cir. 2018).

Even if Pornhub indirectly profited somehow from the videos, that cannot retroactively render the acts depicted commercial because neither participant is alleged to have had such intent at the time the video was made.  *See, e.g.*, *United States v. Zitlalpopoca-Hernandez*, 495 F. App'x 833, 835 (9th Cir. 2012) (reversing TVPRA conviction that relied solely on past conduct).  Nor can the act of uploading the content to Pornhub be considered a commercial sex act.  Although *MindGeek I* and *MG Freesites* cited *Twitter* for the proposition that "the posting of child pornography" to a website is "a commercial sex act," *e.g.*, *MG Freesites*, 2022 WL 407147, at *19, this approach is inconsistent with the plain meaning of the term "sex act."  And the Ninth Circuit has held that the term "sex act" in Section 1591 should be given its ordinary and natural dictionary meaning of "an act performed with another for sexual gratification."  *United States v. Bazar*, 747 F. App'x 454, 456 (9th Cir. 2018).  Posting content to the internet does not meet this definition.

## B.   Defendants Did Not Participate in Plaintiff's Alleged Trafficking.

Both Sections 1591 and 1595 require Plaintiff to establish that Defendants knowingly benefitted "***from participation in***" a commercial sex trafficking venture with the man who created her video.  18 U.S.C. §§ 1591(a)(2), 1595(a) (emphasis added).  Under the narrow FOSTA exception, Plaintiff must plead facts showing Defendants "knowingly assist[ed], support[ed], or facilitate[ed] a [primary] violation" of the TVPRA.  18 U.S.C. § 1591(e)(4); *accord Afyare*, 632 F. App'x at 286 (requiring an "'overt act' that furthers the sex trafficking aspect of the venture").  And even if Section 230 did not apply (and it does), Plaintiff must at a minimum plead a "continuous business relationship" between "the sex traffickers who victimized Plaintiff" and Defendants sufficient to constitute a "tacit agreement" to engage in sex trafficking.  *J.B. I*, 2020 WL 4901196, at *9, 10 (emphasis added); *accord S.J. v. Choice Hotels Int'l,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). Plaintiff fails under

either standard because she fails to allege Defendants had any relationship whatsoever with the man who recorded her, or that they took any "overt act" in support of his purported trafficking.  The TVPRA simply does not extend to everyone who "benefit[s] financially from sex trafficking," as asserted in the FAC.  FAC ¶ 5.

*Kik Interactive* and *Reddit* addressed the participation requirement in the FOSTA context.  In *Kik Interactive*, the plaintiff alleged that Kik was aware its platform was being used for sex trafficking but continued to market it to teenagers without implementing sufficient policies to protect them.  482 F. Supp. 3d at 1245.  The court dismissed the case, holding: "this is exactly the type of claim that [Section 230] immunity bars" and FOSTA was "only intended to create a narrow exception to [Section 230] ... where it was plausible for a plaintiff to allege actual knowledge and overt participation." *Id.* at 1249-51.  Merely operating a platform where third parties could engage in trafficking is insufficient. *Id.*  Similarly, in *Reddit*, Judge Selna rejected the argument that Reddit participated in trafficking by "enabling the posting of child pornography on its websites" and "making it easier to connect traffickers with those who want to view child pornography."  2021 WL 5860904, at *8.  To treat a website operator as a participant in everything third parties use the site for would be contrary to the statute, congressional intent, and common sense. *See id.* at *7-8.

Plaintiff's claim is flawed in the same way.  As in *Kik Interactive* and *Reddit*, Plaintiff merely alleges that Defendants failed to adequately police what website users were doing.  Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591. *Afyare*, 632 F. App'x at 286.  "[T]he [law] does not impose an affirmative duty to police and prevent sex trafficking." *A.B. v. Wyndham Hotels & Resorts, Inc. et al.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021).  Plaintiff asserts that "Defendants intentionally catered their websites to facilitate sex trafficking."  FAC ¶ 180.  As in *Reddit*, however, the only particulars of this alleged "catering" are that Defendants "enable[ed] the posting of child pornography on their websites"; "[made] it easier to connect traffickers with those who want to view child pornography"

**MOTION TO DISMISS COMPLAINT**

through the provision of content-neutral tools such as playlists, messaging tools, and "categories like 'teen'"; and "decline[d] to take down child pornography." *Id.* ¶ 181. Plaintiff's claim that Defendants "maintained affiliations with sex traffickers," *id.*, fares no better because liability requires direct participation, and "cannot be established by association alone." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *accord Reddit*, 2021 WL 5860904, at *8.

Plaintiff also fails to satisfy the arguably lower "tacit agreement" standard for the same reasons. As a recent Eleventh Circuit opinion illustrates, this standard requires more than an awareness that the traffickers used the defendant's services. In *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), the plaintiffs alleged the defendants operated hotels where the plaintiffs were trafficked for prostitution, knowingly allowed the trafficking to take place, and benefitted from it by renting rooms to the traffickers. *Id.* at 719-20. The plaintiffs claimed that by doing so, the defendants had participated in sex trafficking ventures with the perpetrators. *Id.* at 726. The district court rejected this argument and the Eleventh Circuit affirmed, explaining that even though the allegations "may suggest that the [defendants] financially benefitted from renting hotel rooms to the Does' sex traffickers," they did "nothing to show that the[y] participated in a common undertaking … that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." *Id.* at 726-27. The court further reasoned that even if the defendants knew of and profited from the trafficking, "observing something is not the same as participating in it." *Id.* at 727.

This is especially true in the context of a website that can be readily accessed and used by millions of users. The only connection Plaintiff alleges between Defendants and ***any*** alleged sex traffickers is that traffickers posted illegal content to Pornhub. As the *Reddit* and *J.B.* courts held, an ICS "cannot be deemed to have participated in all ventures arising out of each post on its site." *J.B. I*, 2020 WL 4901196, at *10; *Reddit*, 2021 WL 5860904, at *8. "To conclude otherwise would mean that all web-based communications platforms have a legal duty to inspect every

**MOTION TO DISMISS COMPLAINT**

single user-generated message before it is communicated to a single person or displayed to the public, lest such platforms be deemed to have participated in the venture"—an absurd result unsupported by the text of the TVPRA. *Reddit*, 2021 WL 5860904, at *8 (quoting *J.B. I*). Indeed, this is the exact concern that led Congress to pass Section 230 in the first place. *Carafano*, 339 F.3d at 1124.

Plaintiff has not pleaded that Defendants *participated* in a venture that trafficked her under any standard, let alone the standard required by FOSTA.

### C.   Defendants Had Neither Actual nor Constructive Knowledge of Plaintiff's Alleged Trafficking.

To state a TVPRA claim, Plaintiff must allege that Defendants "knew or should have known" of the alleged trafficking. 18 U.S.C. § 1595(a). To satisfy the higher FOSTA standard, she must allege Defendants actually knew of or recklessly disregarded her trafficking. *Id.* §1591(a); *Kik Interactive*, 482 F. Supp. 3d at 1249. Under either standard, Defendants must have the requisite *mens rea* about the specific trafficking involving Plaintiff. *Red Roof Inns*, 21 F.4th at 725 (requiring knowledge the venture "violated the TVPRA as to the plaintiff"); *MindGeek I*, 558 F. Supp. 3d at 839. Awareness that "other sex trafficking incidents occurred on [the platform]" is insufficient. *Kik Interactive*, 482 F. Supp. 3d at 1251.

Nothing in the FAC suggests Defendants knew or could have known about Plaintiff's alleged trafficking. Plaintiff argues that Pornhub should have discovered through its moderation process that her video contained CSEM. *See* FAC ¶ 183. But this argument is a red herring. To be liable under the TVPRA, a defendant must know *prospectively* that the minor "will be" trafficked. 18 U.S.C. § 1591(a)(2); *accord, e.g.*, *Zitlalpopoca-Hernandez*, 495 F. App'x at 835 (defendant must "be[] aware of an established modus operandi that will in the future cause a person to engage in prostitution"). Defendants had no knowledge of Plaintiff or her video at the time it was made; her claim that Defendants should have realized it was CSEM *after* it was made is legally irrelevant. Indeed, the FAC does not even allege how much time

passed between the video's creation and its upload.  *See* FAC ¶¶ 158-59.  And while such knowledge would not be sufficient, Plaintiff alleges no facts demonstrating that Defendants should have known, let alone actually knew, the video of her was illegal when it was posted.  She does not allege anything about her appearance in the video or the video's title or description beyond that it was "tagged with the word 'teen,'" FAC ¶ 160, which does not necessarily imply underage content.  Plaintiff does not even plead she informed Defendants in her removal request that she was underage in the video.  FAC ¶ 162.

Plaintiff cannot circumvent this element by pleading that Defendants knew about other, unrelated incidents of alleged trafficking, FAC ¶¶ 115-46, because these allegations have nothing to do with her or her alleged trafficker.  "[K]nowledge or willful blindness of a general sex trafficking problem … does not satisfy the *mens rea* requirements of the TVPRA."  *S.J.*, 473 F. Supp. 3d at 154.  For example, courts have repeatedly held that victims of commercial sex trafficking cannot sue hotels where they were trafficked based on allegations that the hotels had an "awareness of sex trafficking [at the hotel] in general."  *Id.*  Thus, claims like Plaintiff's that fail to "allege facts showing these Defendants knew or should have known of ***her*** trafficking" specifically must be dismissed.  *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (emphasis added).

In sum, just as Plaintiff fails to plead the other elements of a *prima facie* TVPRA claim, she fails to plead Defendants had any knowledge of her alleged trafficking, let alone at the time it occurred as required by the TVPRA and FOSTA.

## III.   Section 230 Applies to All of Plaintiff's Remaining Claims.

Plaintiff's remaining claims are all barred by Section 230 because they would hold Defendants liable as the publishers of third-party content, and no statutory exception conceivably applies.  Indeed, courts have consistently held that the same or similar claims against ICSs are barred by Section 230.  For example, in *Reddit*, Judge Selna held that claims against another website that hosted CSEM were barred by

**MOTION TO DISMISS COMPLAINT**

Section 230, including claims for unjust enrichment, intentional infliction of emotional distress, receipt and distribution of child pornography, and violations of Cal. Civ. Code §§ 52.5 & 1708.85. 2021 WL 5860904 at *2, 6. As the *Reddit* court observed, these kinds of claims "stem[] from" the defendant's alleged "decision to permit users to upload content to a website," which is "a quintessential function of a publisher under § 230." *Id.* at *6 (citing *Barnes*, 570 F.3d at 1105). The *Twitter* court similarly found that Section 230 barred claims under 18 U.S.C. § 2252A and California state-law claims arising out of the possession and distribution of user-generated CSEM. *Twitter*, 555 F. Supp. 3d at 927-32.[7]

## IV. Plaintiff's Remaining Claims Fail for Additional Reasons.

### A. The FAC Engages in Improper Group Pleading.

Plaintiff has sued six MindGeek entities, but the FAC does not distinguish between them or explain how she believes each entity harmed her. Instead, she glosses over this issue by claiming, without support, that "all the MindGeek entities operate as a single business enterprise" and are "alter egos" of one another. FAC ¶ 15. Plaintiff is wrong, but regardless, group pleading that fails to distinguish among the defendants fails to satisfy the requirements of Rule 8. Under Rule 8, "Plaintiffs must distinguish Defendants' particular roles in the alleged causes of action." *Yost v. Nationstar Mortg., LLC*, 2013 WL 4828590, at *3 (E.D. Cal. Sept. 9, 2013).

---

[7] *See also, e.g.*, *Barnes*, 570 F.3d at 1105-06 (state-law claims for failure to remove sexual content posted by an ex-boyfriend); *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020) (receipt and distribution of child pornography), *cert denied*, 142 S. Ct. 139 (2021); *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006) (same); *M.A. ex rel. P.K v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054-55 (E.D. Mo. 2011) (claims under 18 U.S.C. § 2255 based on publication of child pornography and advertisements for sex with minors); *J.B. I*, 2020 WL 4901196, at *1, 7 (Cal. Civ. Code § 52.5); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (California unfair competition and intentional infliction of emotional distress); *Perfect 10, Inc. v. CCBill, LLC,* 488 F.3d 1102, 1108, 1118-19 (9th Cir. 2007) (California unfair competition); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *4 (C.D. Cal. Feb. 19, 2021) (California unjust enrichment).

Therefore, mere "[l]abels, conclusions, and 'a formulaic recitation of the elements of a cause of action will not do.'" *North Atl. Imports, LLC v. NexGrill Indus., Inc.*, 2020 WL 1042209, at *1 (C.D. Cal. Jan. 23, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Earlier this year in *Doe v. WebGroup Czech Republic*, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022) (subsequent history omitted), another court in this District dismissed claims against two domestic affiliates of a foreign adult website company because the "entities [were] only mentioned in passing a handful of times throughout the sixty-page Complaint" in ways that did "not relate[] to any of the claims in the lawsuit." *Id.* at *7. The same is true here because the FAC fails to set forth what actions were allegedly taken by which Defendant. Accordingly, Plaintiff fails to state plausible claims against any of them and the FAC should be dismissed pursuant to Rule 8. *Id.*; *Roberts*, 2020 WL 3965027, at *2.

### B.     Plaintiff Has Not Alleged That Defendants Knowingly Possessed and Distributed CSEM.

Plaintiff's Second Claim for Relief under 18 U.S.C. § 2252A should also be dismissed because Plaintiff has not pleaded that Defendants "knowingly receive[d] or distribute[d] … child pornography" depicting her. 18 U.S.C. § 2252A(a)(2)(A). The "mere receipt of child pornography" is not prohibited, but rather "the *knowing* receipt of this illegal content" is. *United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011). The defendant must actually know that the performer is underage at the time of receipt or distribution. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Persons, like Defendants, "who seek[] out only adult pornography, but without [their] knowledge [are] sent a mix of adult and child pornography" do not violate 18 U.S.C. § 2252A. *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004). Because Plaintiff has not alleged that Defendants ever knew the videos of her contained CSEM, FAC ¶ 162, Plaintiff's 18 U.S.C. § 2252A claim must be dismissed.

### C.     Defendants Have Not Violated Cal. Civ. Code § 1708.85.

Plaintiff's Third Claim for Relief seeks recovery under California Civil Code

§ 1708.85.   The statute provides a private right of action "against a person who intentionally distributes" private sexually explicit materials "without the other's consent" if "the person knew that the other person had a reasonable expectation that the material would remain private."  Cal. Civ. Code § 1708.85(a).  The statute is intended to address "revenge pornography" situations; it is not targeted at websites that host such content.  While such a claim might be possible against the man who allegedly filmed Plaintiff or the person who uploaded images of her without her consent, no claim lies against Defendants.  The statute expressly prohibits liability where "[t]he distributed material was previously distributed by another person."  *Id.* § 1708.85(c)(6).  Plaintiff alleges that the video "was posted to various websites, including Pornhub.com." *See* FAC ¶¶ 158-59.  She does not allege, nor could she, that Defendants were the first distributor of the video, as she must to maintain a § 1708.85 claim.  Accordingly, Plaintiff's Third Claim for Relief must be dismissed.

### D.   Plaintiff's UCL Claim Should Be Dismissed.

Plaintiff's California's Unfair Competition Law ("UCL") claim should also be dismissed because Plaintiff lacks standing to bring it.  The UCL provides private plaintiffs with a narrow action that "shall be prosecuted exclusively ... by a person who has suffered injury in fact ***and*** has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  In other words, Plaintiff must allege an "***economic injury***" "caused by[] the unfair business practice or false advertising that is the gravamen of the claim."  *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011)).  Plaintiff's conclusory allegation that she has suffered an economic injury "because she was not compensated for Defendants' use of her image and likeness," FAC ¶ 166, is insufficient because it fails to identify any specific "lost money or property," as it must.  *Reddit*, 2021 WL 5860904 at *9.  Where, as here, a plaintiff's "allegations are not enough to plausibly allege that Plaintiff suffered the economic injury required for UCL standing," the claim should

be dismissed.  *Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1036 (N.D. Cal. 2017); *see also Reddit*, 2021 WL 5860904 at *9.

### E.   Plaintiff's Cal. Civ. Code § 52.5 Claim Should Be Dismissed.

Plaintiff's California trafficking claim under Civil Code § 52.5 fails for the same reasons as her TVPRA claims, *see supra* Part II, but the California statute is even narrower than the TVPRA.  Cal. Civ. Code § 52.5(a) permits a "victim of human trafficking, as defined in Section 236.1 of the Penal Code," to bring a civil action. Cal. Penal Code § 236.1(c) is only violated where a person "causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the ***intent*** to effect or maintain a violation of" various criminal statutes including child prostitution and sexual exploitation.  *Id.* (emphasis added).  Plaintiff does not allege that Defendants induced her to engage in a commercial sex act, let alone with the intent of committing further crimes.  Accordingly, this claim also fails.

### F.   The Intentional Infliction of Emotional Distress Claim Should Be Dismissed.

Plaintiff's Sixth and final Claim for Relief for intentional infliction of emotional distress also fails as a matter of law because Plaintiff has not alleged that Defendants' conduct was "intended to inflict injury or engaged in with the realization that injury" to Plaintiff would result, *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009), or that Defendants' conduct, rather than her alleged trafficker's actions, was the "actual and proximate" cause of her emotional distress.  *Id.*  It too should be dismissed.

## V.   The Court Lacks Personal Jurisdiction Over MindGeek S.à.r.l.

It is Plaintiff's burden to establish at least one of the "two types of personal jurisdiction: general and specific" for each Defendant.  *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017).  General jurisdiction requires that Plaintiff demonstrate that each Defendant has contacts with the forum that are so constant and pervasive as to render it essentially "at home" there.  *Id.* at 1780.  This is generally

1   limited to the state where the defendant is either headquartered or incorporated. *Id*.

2   "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or

3   connected with, the very controversy that establishes jurisdiction." *Id*. (citation

4   omitted).

5   MindGeek S.à.r.l. is, and has been since before 2016, a foreign holding

6   company without employees or operations anywhere, let alone in California.

7   Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") ¶ 5.   MindGeek

8   S.à.r.l. has no role in the day-to-day operations of its affiliates, including those that

9   operate or provide services to the website at issue in this case. *Id.* ¶ 7.   Since this

10  foreign holding company is not connected to the alleged wrongdoing in this case, the

11  Court lacks jurisdiction over it.   MindGeek S.à.r.l. should accordingly be dismissed.

12  *See, e.g.*, *Sarafian v. Wright Med. Tech., Inc.*, 2016 WL 1305087, at *4 (C.D. Cal.

13  Apr. 1, 2016) (finding court lacked personal jurisdiction over holding company where

14  "other than being the parent and holding company of [the subsidiary], it does not

15  appear that [the holding company] has *any* contacts with California" (emphasis in

16  original)); *Allergan, Inc. v. Merz Pharms., LLC*, 2011 WL 13323227, at *9 (C.D. Cal.

17  Aug. 1, 2011) (granting dismissal for lack of personal jurisdiction where "Defendant

18  simply operates as a holding company, and the subsidiaries' business operations are

19  independent from and not controlled by Defendant").[8]

20  ## CONCLUSION

21  For the reasons set forth above, the Court should grant this motion and dismiss

22  the FAC with prejudice.

23

24  ---

[8] MG Freesites II Ltd and MG Content RT Limited have both ceased operations and

25  their assets have been transferred to Freesites.  Andreou Decl. ¶¶ 23, 27. Even were

the entities active, they should be dismissed on jurisdictional grounds. MG Freesites

26  II was organized and had its principal place of business in Cyprus.  *Id.* ¶ 21.  MG

Content RT was organized in Ireland and had its principal place of business in Cyprus.

27  *Id.* ¶ 25.  As Plaintiff has failed to plead that either had anything to do with her claims,

28  *supra* Part IV.A, they should be dismissed.

1   DATED: MAY 16, 2022            DECHERT LLP

2                                        RESPECTFULLY SUBMITTED,

3

4                                           ___/s/___ *Benjamin M. Sadun*___

5                                       BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com

6                                       DECHERT LLP

7                                       US Bank Tower, 633 West 5th Street, Suite 4900

8                                       Los Angeles, CA 90071-2013

9                                       Phone: (213) 808-5721; Fax: (213) 808-5760

10                                      KATHLEEN N. MASSEY (*admitted pro hac vice*)

11                                      kathleen.massey@dechert.com

12                                      DECHERT LLP

13                                       Three Bryant Park
1095 Avenue of the Americas

14                                      New York, NY 10036

15                                      Phone: (212) 698-3500; Fax: (212) 698 3599

16                                      *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS COMPLAINT**