1
2
3
4
5
6
7
8             **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10               **WESTERN DIVISION**

11

12 JANE DOE on behalf of herself and all others similarly situated,

       Case No. 2:22-cv-01016-DMG-PVCx

13

       **STIPULATED ORDER RE:**
       **DISCOVERY OF**
       **ELECTRONICALLY STORED**
       **INFORMATION**

                  Plaintiff,

14 v.

15

16 MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG

17 FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC,

18 INC. (D/B/A MINDGEEK),

19                 Defendants.

20
21
22
23
24
25
26
27
28

## I.     PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Order on Discovery Disputes, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## II.    COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

## III.   ESI PERSON(S) MOST KNOWLEDGEABLE

The parties have identified ESI Person(s) Most Knowledgeable ("ESI PMK") to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI PMK will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the ESI PMK, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.    PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To

reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

A.     Only ESI in the possession, custody, or control of the parties that was created or received between February 19, 2011 and the present will be preserved;

B.     The parties agree to exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

C.     The parties will agree on the number of custodians per party for whom ESI will be preserved;

D.     Commercially available operating system and application file information included on the National Institute of Standards and Technology ("NIST") List (http://www.nsrl.nist.gov/) will be removed from electronic file collections.

**V.     SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**VI.     PRODUCTION FORMATS**

The parties agree to produce documents in ☒ PDF, ☒ TIFF, ☒ native and/or ☒ paper, or a combination thereof (check all that apply) file formats.  If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.  The parties agree not to degrade the searchability of documents as part of the document production process.

The parties further agree to adopt the ESI Production Protocol attached hereto as Exhibit A which provides additional production format specifications.

2

**VII.   DOCUMENTS PROTECTED FROM DISCOVERY**

A.      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not on its own a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

B.      The parties have agreed to a process for producing privilege logs as described in Exhibit A hereto. The process for handling the production of privilege or otherwise protected materials is addressed in the Protective Order entered in this matter.

C.      Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

**VIII.  MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**GOOD CAUSE HAVING BEEN SHOWN BY THE PARTIES'**

**STIPULATION, IT IS SO ORDERED.**

Dated: June 3, 2022

_____
Honorable Pedro V. Castillo
United States Magistrate Judge

**EXHIBIT A**

**PROTOCOL GOVERNING THE PRODUCTION OF
ELECTRONICALLY STORED INFORMATION ("ESI")**

1. **Deduplication.**  The producing party is only required to produce a single copy of a responsive document (*i.e.*, TIFF or PDF) and may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) globally and across custodians.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  However, metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced, to the extent it exists at the point of collection, in an "ALL CUSTODIAN" field in the production load file.

2. **Production of ESI.**

    a. **Images.**  The parties will produce ESI in 300 DPI Group IV Black & White Tagged Image File Format (.TIFF or .TIF) files. TIFF files shall be produced in single-page format and 81/2 x 11 inch page size (except for documents requiring a different page size) along with corresponding image load files (e.g., .OPT, LEP, DII file). All TIFF files are to be provided with an accompanying searchable text (.TXT) file, and such text files shall contain the full text extraction. Extracted text will not be provided for electronic documents that have been redacted (e.g., for privilege or protected personal information) because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

    b. **Microsoft Office, WordPerfect, and Other Standard Documents (e.g., Google Docs and PDF Documents).**  MS Office files, WordPerfect, and other standard documents, such as PDF documents and the like, shall be converted to single-page TIFF and produced consistent with the specifications herein.  If the document contains comments or tracked changes, the TIFF images shall be generated to include the comments or tracked changes contained in the file.

    c. **Microsoft PowerPoint and Other Presentation Files.**  The parties will produce slide shows (e.g. Microsoft PowerPoint presentations) not requiring redaction as TIFF images and in native format. Slide shows requiring redaction will be produced as TIFF images with corresponding searchable OCR text (or in searchable PDF if production format dictates) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

d.    **Metadata.**

(i)    During the process of converting ESI from the electronic format of that application in which the ESI is normally created, viewed, and/or modified to TIFF, metadata values should be extracted and produced in a load file ("metadata load file").  The metadata values that are to be extracted and produced in the metadata load files – where reasonably available and where permitted under applicable international privacy regimes (.DAT file using concordance standard delimiters) are the following:

| Field Name | Field Description | Hard Copy | Email | Non-e-mail ESI |
|---|---|---|---|---|
| BegBates | Beginning Bates number (including Prefix) | X | X | X |
| EndBates | Ending Bates number (including Prefix) | X | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range | X | X | X |
| EndAttach | Ending Bates number of the last document in attachment range | X | X | X |
| Custodian/Source | Name of custodian(s) or source of email(s) or file(s) produced | X | X | X |
| File Type | The type of document (i.e. email, attachment, edoc, hard copy) | | X | X |
| Subject | Subject line extracted from an email message | | X | |
| From | From field extracted from an email message | | X | |
| To | To or Recipient extracted from an email message | | X | |
| CC | Carbon Copy ("Cc") field extracted from an email message | | X | |
| BCC | Blind Carbon Copy ("Bcc") field extracted from an email message | | X | |
| Sent Date | Sent date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | | X | |

STIPULATED ORDER RE: DISCOVERY OF ESI

| Field Name | Field Description | Hard Copy | Email | Non-e-mail ESI |
|---|---|---|---|---|
| Received Date | Received date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | | x | |
| File Name | Name of file as saved on system | | | x |
| Author | The author of the document | | | x |
| File Extension | The document extension extracted from document properties | | | x |
| Folder Path | The folder location of the document on the original computer | | x | x |
| Redactions | Yes/No determination advising if the document contains redactions | x | x | x |
| Confidentiality | Yes/No field or whatever type of Confidentiality is being claimed | x | x | x |
| Last Modified Date | The application recorded date and time on which the document was last modified (Or, if a party has 2 separate fields, date and time can be in separate fields) | | | x |
| Created Date | The application recorded date and time on which the document was created (Or, if a party has 2 separate fields, date and time can be in separate fields) | | | x |
| Hash Value | MD5 or SHA-1 hash value used to dedupe the data | | x | x |
| Page Count | Number of pages in the produced document | x | x | x |
| Native Link (if natives are exchanged) | Relative path to any files produced in native format, such as Excel spreadsheets | | | x |

| Field Name | Field Description | Hard Copy | Email | Non-e-mail ESI |
|---|---|---|---|---|
| Text Path | Relative path to any OCR/extracted text files in the production set | x | x | x |
| Duplicate Custodian | When globally deduping, this field will list for the Producing Party the other custodians that possessed a copy of the document. | | x | x |

    (ii) The producing party is not obligated to manually populate any of the metadata fields if such fields cannot be extracted from a document, with the exception of the following:  BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, DUPLICATE CUSTODIAN, CONFIDENTIALITY, PAGE COUNT, and REDACTIONS.

   3. **Paper or Scanned Records.**

    a. Hard copy documents shall be scanned and produced in electronic form by converting them to single-page PDF or TIFF images and producing them following the same protocol set forth herein.

    b. Images of all file labels, file headings, and file folders associated with any hard copy document shall be produced with the images of the hard copy documents.

    c. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make reasonable efforts to have their vendors unitize documents correctly and will commit to reasonably address situations where there are improperly unitized documents.

    d. The database load file shall include the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, and REDACTIONS.

   4. **Documents Produced in Native Format.**  Native files shall be produced for the following data types below with a corresponding TIFF placeholder.

a.      Audio files (.mp3, .wav, .ram, .ra, .mid, etc.)

b.      Video files (.3g2 .3gp .asf, .asx, .avi, .flv, .mov, .mp4, .mpg, .rm, .swf, .vob, .wmv, .etc)

c.      Microsoft Excel documents and CSV files, except that if a Microsoft Excel document or CSV file requires redaction, then TIFF images of the document after the redaction has been applied shall be provided and the native file and full text may be withheld or a party may redact native Excel files by inserting a blackbox  where the material is redacted if the producing party maintains a pristine non-redacted version of the Excel.  The produced file should be named for the starting production number and the confidentiality designation.

d.      If necessary, the parties will meet and confer regarding production of other file types in native format.

5.      **Production of Databases and Other Structured Data.**  Production of responsive data contained in relational databases should be achieved via report or export of such data to MS-Excel spreadsheets or .csv files that will be produced, if reasonably feasible.  If this is not reasonably feasible, the parties will meet and confer regarding a reasonable format.

6.      **Document Identifier.**  Each produced document must have a unique and sequential Bates number burned onto the lower right-hand corner of the page and any confidential designation required in the lower left-hand corner.  The Bates number and/or designation should not interfere with the information presented in the document.

7.      **Email Families.**  All parent/child document relationships must be maintained unless otherwise agreed upon.   These fields should be identified in the data load file as indicated above.  When an attachment is withheld for privilege, the producing party shall produce a one-page TIFF image (or PDF if production format dictates) in place of the withheld attachment, correspondingly stating "Document Withheld-Privileged", and bearing a sequential BATES number within the family BATES range.  If any attachment to an email contains responsive content, then the cover email shall be produced for context, regardless of the cover email's responsiveness.  The cover email may be redacted in part to remove privileged or protected personal information, as described below and in accordance with the Parties' Stipulated Protective Order.

8.      **Embedded Files.**  Except as provided below, embedded files are to be fully extracted, and the appropriate parent-child relationship must be maintained unless such original document is produced in native format with the embedded

8

information contained within it.  Examples of embedded files include but are not limited to the following:

    a.    ZIP files and other compressed file formats;

    b.    Embedded PDF file formats;

    c.    Embedded e-mails that exist as an attachment to an e-mail.

9.    **Image Placeholders.**  For documents produced natively or withheld from responsive families, image placeholders should be produced and include a text description of the reason for withholding (i.e. "DOCUMENT PRODUCED NATIVELY") and should be branded with a corresponding Bates number and any confidentiality designation required.

10.    **Redactions.**  In the event a document requires redaction, native files and full text may be excluded.  Metadata fields, containing information that should be withheld in line with the redactions may also be excluded.  The TIFF or PDF image should use a black solid line or some other marking to show the word is clearly viewed as a redaction (e.g., a label with the word "redacted") where applicable and the REDACTIONS field should be populated "Yes" to indicate the document contains a redaction.  The reasoning for the redaction should be populated within the redaction text on the face of the document (e.g., REDACTED – PRIVILEGE) or within a metadata field.

11.    **Privilege Logs.**

    a.    Within 45 days of a corresponding document production, the producing party will provide a privilege log in Microsoft Excel format separately logging each document redacted in part or withheld from production; the basis for the claim of privilege; and the following metadata fields, where applicable and available:  BEGBATES, SENT DATE; LAST MODIFIED DATE; CUSTODIAN/SOURCE; DUPLICATE CUSTODIANS; TO; FROM; CC; BC; SUBJECT; FILE NAME.  Privileged information may be redacted from the SUBJECT and FILE NAME metadata fields.

    b.    Inadvertent failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission and no later than ten (10) business days after discovery, the producing party sends to the requesting party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

12.   **Protective Order.**  Nothing in this protocol shall be construed to affect, modify or amend any Stipulated Protective Order the parties file with the Court.

13.   **Discoverability and Admissibility.**  Nothing in this protocol shall be construed to affect the discoverability or admissibility of any document or data.  All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time in accordance with the applicable rules.

14.   **No Waiver.**  The inadvertent production of privileged or work-product protected documents, ESI or information is not on its own a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

15.   **File Exchange for Use in Transmitting Productions.**  All data should be encrypted when transferred.  Secure FTP with a password protected ZIP file or Encrypted Padlock Hard Drive/Flash Drives should be provided for all productions.  ZIP file passwords should be provided in a separate email or under separate cover.